## SCOTT v. COMMISSIONER OF INTERNAL REVENUE.

Circuit Court of Appeals, Seventh Circuit. December 13, 1928.

No. 4083.

Thomas L. Marshall, of Chicago, Ill., for petitioner.

Mabel Walker Willebrandt, Asst. Atty. Gen., Sewall Key and Randolph C. Shaw, Sp. Asst. Attys. Gen. (C. M. Charest, of Washington, D. C., and L. W. Scott, of St. Paul, Minn., of counsel), for respondent.

Before ALSCHULER, EVAN A. EVANS, and PAGE, Circuit Judges.

ALSCHULER, Circuit Judge. Petitioner's father, John E. Scott, owning a tenth interest in a large and lucrative business partnership, in 1911 made an agreement with his son Robert L. Scott whereby he conveyed this interest to Robert, who was to hold it in trust, to receive the net profits and earnings of the partnership distributed upon this share, and to pay them to the father during his life, and upon his death to divide the property, and all accumulations thereon, equally among the three sons (one of whom is petitioner), in which case the sons were thereafter to pay to their mother, if surviving their father, the sum of $20,000 annually while she lived. The father reserved the right to terminate the trust at any time, upon notice in writing to the sons.

In 1914 the father terminated the trust, and he made another agreement respecting this partnership interest with the sons, wherein it is recited that whereas, under the trust agreement of 1911 "a question has arisen as to whom the accumulated income arising from such capital and surplus belongs, and as to who should report said income to the federal government and pay the income tax thereon; and whereas, the parties wish to remove all uncertainty upon said questions; and whereas, furthermore, the party of the first part [the father] wishes a definite, fixed income, which shall not in any manner depend upon the earnings of said copartnership, and wishes to transfer absolutely to the parties of the second part [the three sons] any and all interest, * * * he has in the property, * * *" the party of the first part revokes the trust, and conveys the entire partnership interest, with all accumulations thereon, to the three sons in equal shares, to be their absolute property.

It is further stated in this contract: "And for and in consideration of the transfer and conveyance by the party of the first part to the parties of the second part of said property, the parties of the second part do hereby jointly and severally agree * * * to pay to the said party of the first part during his life the sum of thirty-six thousand ($36,000) dollars per annum," and upon his death, leaving his wife him surviving, to pay unto her annually during her life $25,000.

The sons made the stipulated payments to the father, and since his death in 1918 have made the payments to their mother. The question arises on the undertaking of petitioner to deduct from his gross income for

the tax year 1921 one-third of the $25,000 payment to the mother. For the previous years the deduction was permitted, but for the year 1921, and thereafter, the Commissioner disallowed it, and on appeal to the Board of Tax Appeals the Commissioner's ruling was sustained.

For petitioner it is contended that this payment is a charge upon, or reservation from, the income from the partnership property, and a condition upon which its enjoyment by petitioner is predicated, and is therefore deductible. For respondent it is urged that the annual payments are the consideration for which the property was acquired, and a capital payment not deductible from income.

Under the trust agreement the trustee was but a conduit through which the distributed income passed from the partnership to the father, and no such question arose. It is true that what the father actually received under the trust agreement was substantially the same as specifically provided to be paid in the later agreement. This was because of an agreement between the partners that each share should have a specified drawing account, leaving the balance of earned profits undistributed, and upon this share the stipulated drawing account was $36,000. While the earnings were many times more, they were left to accumulate. Under the trust agreement these accumulations would go to the three sons upon the father's death, provided the father had not exercised his right to revoke the trust.

In the new contract the father revoked the trust, and conveyed the entire interest absolutely to the sons, specifying as the consideration therefor these annual payments to the father and mother, and removed all interdependence between the annual payments and the profits of the partnership by making the payments a personal undertaking of the sons, wholly regardless of whether there were any partnership profits. This intent is so simply and definitely expressed as to leave no room for doubt of the mutual undertakings; and if the last contract only were considered there would be no question that the payment to the mother was capital investment by the sons, and therefore not deductible from petitioner's income.

It is contended that all the circumstances show the transfer of this interest to have been a gift to the sons. As indicating such a conclusion, it is pointed out that, apart from this tenth interest, the father had previously given the sons large interest in the same partnership; the similarity of the payments to the father under both agreements; and the turning over to the sons of an interest so vastly more valuable than the value of the stipulated payments.

While unquestionably the actual value of the interest was many times more than the value of the stipulated annuity to father and mother, and to the extent of the excess might be considered a gift in the usual purport of that term, nevertheless the annuity cannot be regarded as being merely nominal, and warranting the conclusion that the entire transaction manifests a gift. It is surely not so nominal but that the petitioner is predicating this claim upon the right to deduct one-third of it from his income.

The situation is not different from what it would be if the sons, instead of assuming to pay the annuity as a consideration for the transfer, had actually paid at that time an amount equivalent to the then present worth of the annuity, calculated upon mortality tables. It would hardly be contended that such a sum, so paid as a consideration for the transfer, would be deductible from the gross income of the payor in fixing his federal income tax for such year (assuming the law then to have been as in 1921). If such gross payment would not have been deductible, we see no reason for applying a different rule to the annual payments.

The inquiry made and considered in brief for petitioner—whether, in case petitioner sold this interest for its real value, the difference between such value and the value of the expressed consideration therefor would be taxable as profits—need give us no concern here. Whatever, if any, of the interest might in such contingency be regarded as a gift is not here involved.

While we may look to the entire transaction to determine its nature, we can see no reason in this case to give to it an interpretation in any way different from that which the parties themselves have given it, as manifested by their agreement. They provide for absolute conveyance to the sons, they divorce the annual payments from partnership profits, and specify an annuity as the *consideration* moving from the petitioner and his brothers. We can see no reason why, for the purposes of this tax, we should infer a status different from that which they plainly and intentionally assumed. We perceive no theory upon which the claimed deduction from income is permissible.

The order of the Board of Tax Appeals is affirmed.