### FALK CORPORATION v. COMMISSIONER OF INTERNAL REVENUE.
### No. 4737.

Circuit Court of Appeals, Seventh Circuit.
July 6, 1932.

Bernhard Knollenberg, of New York City (Quarles, Spence & Quarles, of Milwaukee, Wis., and Lord, Day & Lord, of New York City, of counsel), for appellant.

G. A. Youngquist, Asst. Atty. Gen., and Sewall Key and Erwin N. Griswold, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Edward L. Updike, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Before SPARKS, PAGE, and ANDERSON, Circuit Judges.

SPARKS, Circuit Judge (after stating the facts as above).

The first question presented by this appeal is whether petitioner is entitled to deduct in its income tax return for 1923 the amount which it paid to the state of Wisconsin in that year in payment of taxes assessed by the state in 1922 against another corporation, where it appears that the petitioner had earlier acquired part of the assets of the other corporation, and in part payment for those assets had agreed to pay any back taxes which might be assessed against the other corporation.

The ruling of the Board is based on the theory that taxes paid are deductible as such only by those upon whom they are imposed, and that the taxes assessed against Falk Company were paid by petitioner as part consideration for the assets of that company which petitioner by its contract had assumed and agreed to pay, and that therefore it is not such a payment of tax for which petitioner is entitled to a deduction as contemplated by the statute.

Petitioner, on the other hand, relies upon a strict literal interpretation of the statute and insists that all taxes paid are deductible, except those specifically exempted by the statute. It may be conceded that the tax in controversy does not come within any of the exemptions specifically enumerated in the statute now under discussion.

With petitioner's contention we cannot agree, and we think the Board's ruling is right. It is admitted that the money paid by petitioner to the state of Wisconsin was a part of the consideration for the assets received by it from Falk Company. It was made so by virtue of a contract entered into between Falk Company and petitioner. The amount paid, therefore, was a capital expenditure and of course cannot be deducted from petitioner's income in the determination of its income tax unless there is legislative sanction for doing so.

While the statute now in controversy, with certain exceptions not material to this discussion, authorizes deductions for taxes paid or accrued within the taxable year, yet we cannot believe it was the intention of Congress to permit one, in making his income tax return, to deduct from his income all taxes actually paid by him regardless of the fact that they may have been assessed in the first instance against another, and regardless of the further fact that payer may have received full consideration for making such payment, or may have made the payment voluntarily. Suppose A owns his home, upon which a tax sale is imminent. He also owns an automobile which is well worth the amount of taxes due on his home, and which he proposes to sell and transfer to B in consideration that B will pay the taxes on the home. The offer is accepted. The transfer is made and B pays the taxes. Under such circumstances we think it could not be seriously contended that in making his income tax return B would be entitled to deduct from his income the amount paid for A's taxes. It is quite true that B performed the physical act of paying the taxes, but he did so out of property which A had placed in his hands for that purpose. In effect B paid for the automobile and A paid the taxes. The object of the statute is to arrive fairly at taxpayer's net income by permitting him to deduct from his gross income what Congress regards as proper items of expense in producing his income. If, for instance, B is permitted to deduct from his gross income the amount he paid for A's taxes, the balance would not honestly reflect his net income, because he would be receiving credit for an item of expense which in fact cost him nothing.

Suppose corporation X says to corporation Y: "We understand that you have recently organized with a capital stock of 100,000 shares of the par value of One Hundred Dollars per share. We propose to sell and transfer to you all of our assets, free and clear from all liens and encumbrances, which assets we guarantee to be of the fair market value of $7,105,795.77, in consideration that you transfer and deliver to us 60,000 paid up shares of your capital stock and that you assume and agree to carry out all of our sales, purchase, and employees contracts, and provided, further, that you assume and agree to pay all of our debts and obligations of every kind and nature, including an income tax of $152,202.51 due from us to the State of Wisconsin." Corporation Y accepts the proposition of corporation X and the transfers are made. The result of the transaction is that 60,000 shares of the capital stock of Y corporation are paid up and delivered to X, and there remains in Y's hands $1,105,795.77, consisting of real estate and personal property, including cash of the approximate amount of $166,000, out of which Y has obligated itself to carry out the contracts and pay the debts and obligations of corporation X, including the income tax of $152,202.51. Corporation Y subsequently paid the Wisconsin income tax of corporation X as it had promised, but it paid it out of property and funds which X had delivered to Y for that purpose. In effect, Y performed the physical act of paying the taxes, but in doing so it was paying for the assets which it had purchased from X, and, as a matter of fact, X paid the taxes, because it placed the money in Y's hands for that specific purpose. Under such circumstances we think it quite obvious that X cannot be considered a taxpayer within the meaning of the statutes above referred to, nor can the amount of money paid by it to the state of Wisconsin, so far as Y is concerned, be considered as tax, but rather as payment of a contractual obligation which it owed to X. This position is supported in principle in Athol Mfg. Co. v. Commissioner (C. C. A.) 54 F.(2d) 230; King Amusement Co. v. Commissioner (C. C. A.) 44 F.(2d) 709; Rotan v. United States (D. C.) 43 F. (2d) 232; Hill v. Commissioner (C. C. A.) 38 F.(2d) 165; Newark Milk & Cream Co. v. Commissioner (C. C. A.) 34 F.(2d) 854; Scott v. Commissioner (C. C. A.) 29 F.(2d) 472; Mastin v. Commissioner (C. C. A.) 28 F.(2d) 748, and Meriwether v. Garrett, 102 U. S. 472, 26 L. Ed. 197.

The hypothetical statement of facts last referred to is not in every respect the same as the statement of facts now before us. In the instant case the entire capital stock of petitioner was traded for the assets of the Falk Company, and the stockholders in both companies are substantially the same and the

interests are identical; but we cannot see that this fact makes any difference. The two corporations herein involved are separate entities, and the court will so regard them unless it is apparent that thereby manifest injustice will result. It is apparent from the record that the stockholders of Falk Company, for reasons known to themselves and which were no doubt beneficial and sufficient, desired to, and did, create another separate corporate entity under the name of the Falk Corporation for the purpose of taking over the entire business of Falk Company and conducting it as the company had formerly conducted it. We think it is fair to assume that the benefits anticipated by the creation of that separate entity have been realized, and no facts or special circumstances have been presented from which the court can fairly say that a manifest injustice will be done by continuing to regard the two corporations as separate entities, unless it be the fact that petitioner's income tax will thereby be increased. This fact we deem insufficient.

In Kissel v. Commissioner, 15 B. T. A. 1270, the Board of Tax Appeals said: "The liability for the payment of the tax rested upon the owner of the land, and he is the only one, in our opinion, who is entitled to the deduction for taxes paid or accrued within the taxable year. Any agreement between him and a third party for the paying of his liability does not entitle such third party to a deduction * * *." That principle is also followed in Appeal of Musser, 3 B. T. A. 498; Hamilton v. Commissioner, 6 B. T. A. 240; Hurley v. Commissioner, 6 B. T. A. 695; Eisenberg v. Commissioner, 11 B. T. A. 574; Grand Hotel Co. v. Commissioner, 21 B. T. A. 890.

It is contended by petitioner that to hold that taxes are deductible as such only by those on whom they are imposed is to read into the statute a limitation which is not warranted, and in support of that contention it cites United States v. Woodward, 256 U. S. 632, 41 S. Ct. 615, 65 L. Ed. 1131, and United States Playing Card Co. v. Commissioner, 15 B. T. A. 975. In each of those cases payment was made by the taxpayer upon whom the tax was imposed, and in that respect those cases are dissimilar to the instant one. We do not regard our holding as in any way limiting the plain words of the statute; but, on the other hand, we say that petitioner has not brought itself within the statutes because in reality it has paid no tax in the true sense of that word.

Petitioner insists, however, that such position is in conflict with United States v. Updike, 281 U. S. 489, 50 S. Ct. 367, 74 L. Ed. 984. In that case the Commissioner, in 1920, assessed additional income and excess profits taxes against a corporation for its fiscal year ending June 30, 1917. In August, 1917, the corporation was dissolved and its net assets were distributed to the stockholders. On the theory that said stockholders were liable for the tax to the extent of the assets received by them, the United States, in 1927, sued Updike, a stockholder at the time of the dissolution, for the taxes so assessed. Updike pleaded the six year statute of limitations, and the government contended that a suit against a transferee, for taxes assessed against the corporation, to enforce Updike's liability therefor to the extent of the corporate property received by him on dissolution was not a suit to collect a tax within the meaning of the statute, and hence the six-year statute of limitations was not applicable. The court held that the suit was one to collect a tax. Petitioner therefore argues that if such obligation be a tax, then the payment of it is the payment of a tax.

There are several features in that case which distinguish it from the instant one. Updike was a stockholder of the dissolved corporation. His interest therein had been reduced to cash and paid to him, but that fact had not increased the value of his estate. The statute made his estate liable for the taxes assessed against the corporation to the extent of the assets received by him, and that liability never lost its characteristic as a tax obligation. In the instant case petitioner was not a stockholder of Falk Company. It is true that it was a transferee of Falk Company's assets and, so far as the state of Wisconsin was concerned, those assets were liable for the payment of the company's taxes; but petitioner is in no position to claim that it was a transferee of corporate assets upon which the transferor had not paid its taxes. As between petitioner and the company, those taxes were paid by the company at the time its assets were turned over to petitioner. By virtue of that transfer petitioner in effect received in value, over and above an amount sufficient to pay par value for all of its stock, the sum of $1,105,795.77, and its gross assets were enriched to that extent, for which petitioner had given nothing in return except its promise to pay all obligations of Falk Company, which included the taxes above referred to.

It must be borne in mind that this is not a suit against a transferee of corporate assets to recover taxes imposed thereon prior to the transfer, as in the Updike case; but it is a suit to reduce a federal income tax imposed upon petitioner for a year subsequent to the transfer by deducting from petitioner's gross income the amount of income tax and surtaxes imposed upon the transferor by the state of Wisconsin for the years prior to the transfer, which petitioner claims to have paid as transferee.

The effect of the contract between the parties in suit was this: Falk Company said to petitioner: "Our gross assets are sufficient in value to pay for the entire issue of your capital stock and to carry out all of our contracts and to pay all of our debts and taxes. We propose, therefore, to transfer all those assets to you in consideration that you issue to us all of your capital stock and that you pay all of our debts and taxes and carry out all of our contractual obligations." Under those circumstances we are convinced that Falk Company in fact paid the taxes in controversy, for it furnished to petitioner the money and property with which to make the payment. When petitioner performed the physical act of making the payment he was merely carrying out his contract by paying Falk Company's taxes with that company's money, and he cannot be considered as a taxpayer who has paid taxes within the meaning of the statute. We find nothing in the other cases cited by petitioner which are inconsistent with the views we have expressed.

The only other question presented is whether the Wisconsin taxes in controversy must be deducted, if at all, as an accrued item in 1921, when the liability was assumed. In view of the fact that we hold them not deductible at all by petitioner, it is not necessary to pass on that question.

The order of the Board is affirmed.