CHILDERS DISTRIBUTING COMPANY, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Childers Distributing Co. v. Commissioner
Docket No. 21457-80
United States Tax Court
T.C. Memo 1983-237; 1983 Tax Ct. Memo LEXIS 547; 46 T.C.M. (CCH) 3; T.C.M. (RIA) 83237; May 2, 1983. J. R. Brooks,William B. Tatum,Joe H. Ritch and W. Stanley Rodgers, for the petitioner. Jillena A. Warner, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined a deficiency in petitioner's income tax for calendar year 1977 in the amount of $33,261.59. Due to concessions made by petitioner, the only issue for decision is whether certain Alabama beer taxes should have been included *549 as part of the cost of petitioner's yearend beer inventory for 1977 or whether these taxes to the extent applicable to ending inventory were deductible under section 164(a)[1] in 1977, the year they were accrued by petitioner. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioner, Childers Distributing Co. Inc., (Childers) is a corporation which had its principal place of business in Huntsville, Alabama at the time of filing its petition. Petitioner filed its Federal corporation income tax return on an accrual basis for calendar year 1977 with the Internal Revenue Service Center, Atlanta, Georgia. During the late 1940's or early 1950's, John Childers, Sr. operated a wholesale beer distribution business in Huntsville, Alabama as a sole proprietorship. In the late 1950's Mr. Childers and his son formed a partnership to operate the business. In 1977 Mr. Childers and his son incorporated the wholesale beer distributionship and became the sole corporate shareholders. During this 34-1/2 years of *550 business history, Childers and its predecessors have distributed packaged beer primarily for the Miller Brewing Co. (Miller) to retail outlets. Childer's business operations and accrual basis accounting method were virtually the same as used by its predecessor partnership and sole proprietorship throughout their business history. During 1977, Alabama imposed beer taxes pursuant to Alabama Code Title 28, sections 28-3-180, 28-3-181 and 28-3-182. [2] These statutes provided as follows: § 28-3-180. One-half cent tax. In addition to all other taxes now imposed by law and in addition to the licenses provided for in this chapter, there is hereby levied a license or privilege tax on every person licensed under this chapter who sells or stores or receives for the purpose of distribution to any person, firm, corporation, club or association within the state of Alabama any malt or brewed beverages as defined in this chapter which shall be measured by and graduated in accordance with the volume of sales of such person and which said tax shall be collected by the alcoholic beverage control board and shall be one-half cent on each 12 fluid ounces or fractional part thereof. The proceeds *551 of this tax shall be paid into the general fund of the state treasury. § 28-3-181. Additional three and one-half cent tax. (a) Levy.--In addition to all other taxes now imposed by law and in addition to the licenses provided for by this chapter, there is hereby levied a privilege or excise tax on every person licensed under the provisions of this chapter who sells, stores or receives for the purpose of distribution to any person, firm, corporation, club or association within the state of Alabama any malt or brewed beverages. The tax levied by this subsection shall be measured by and graduated in accordance with the volume of sales by such person of malt or brewed beverages, and shall be an amount equal to three and one-half cents for each 12 fluid ounces or fractional part thereof. (b) Collection.--The tax levied by subsection (a) of this section shall be collected by the alcoholic beverage control board in the same manner as other taxes and license fees are collected by it. The tax shall be added to the sales price of all malt or brewed beverages sold, and shall be collected from the purchasers. It shall be unlawful for any person, firm, corporation, club or *552 association who is required to pay the tax in the first instance to fail or refuse to add to the sales price and collect from the purchaser the required amount of tax, it being the intent and purpose of this provision that the tax levied is in fact a levy on the consumer, with the person, firm, corporation, club or association who pays the tax in the first instance acting merely as an agent for the state for the collection and payment of the tax. § 28-3-182. Additional one cent tax. (a) Levy.--In addition to all other taxes now imposed by law and in addition to the licenses provided for by this chapter, there is hereby levied a privilege or excise tax on every person licensed under the provisions of this chapter, who sells, stores or receives for the purpose of distribution to any person, firm, corporation, club or association within the state of Alabama any malt or brewed beverages. The tax levied by this subsection shall be measured by and graduated in accordance with the volume of sales by such person of malt or brewed beverages and shall be an amount equal to $.01 for each 12 fluid ounces or fractional part thereof. (b) Collection.--The tax levied by subsection *553 (a) of this section shall be collected by the alcoholic beverage control board in the same manner as other taxes and license fees are collected by it. The tax shall be added to the sales price of all malt or brewed beverages sold and shall be collected from the purchasers. It shall be unlawful for any person, firm, corporation, club or association who is required to pay the tax in the first instance to fail or refuse to add to the sales price and collect from the purchaser the required amount of tax, it being the intent and purpose of this provision that the tax levied is in fact a levy on the consumer, with the person, firm, corporation, club or association who pays the tax in the first instance acting merely as an agent for the state for the collection and payment of the tax. Additionally, during 1977 the City of Huntsville, Alabama imposed a tax on beer at a rate of 4 cents per 12 fluid ounces; this tax was collected from the beer distributors. [3]
*554 In 1977 Alabama's system for collecting the beer taxes imposed by Alabama Code Title 28 focused on the breweries. Under the accounting system, known as the Tax Pay Crown System, typically the breweries, even those out of State, purchased bottle caps displaying the Alabama tax stamp from a crown manufacturer; the price of the bottle caps equaled the beer taxes imposed under the Alabama statutes. The crown manufacturer deposited the beer taxes with the Alabama treasury and the treasury credited an unearned beer tax account and issued a certificate of proof of payment. The breweries affixed the bottle caps to the bottles before delivery to the distributors located in Alabama. The breweries' invoices, delivered at the same time as beer delivery, charged the receiving distributors for the amount of state taxes previously paid by the breweries through the acquisition of the bottle caps. Each month the breweries filed a report with the AlabamaABC Board, which was responsible for auditing and administering the state beer taxes. Each brewery's report specified the amount of beer that had been shipped to distributors in Alabama, and at that time the State treasury debited its unearned *555 beer tax account and credited its earned beer tax account for the taxes involved. [4]
Where breweries delivered beer shipments without first paying the State beer taxes and affixing the Alabama bottle caps, the AlabamaABC Board looked to the beer distributors to remit the beer taxes on such purchases. If the distributor failed or refused to pay the uncollected beer taxes the ABC Board customarily instituted a levy on the distributor's property; the ABC Board would not attempt to collect the tax from the retailer or ultimate consumer. In 1977, the City of Huntsville beer tax was collected from distributors in much the same manner as the State beer tax. Childers' normal business practice has been to order beer from Miller and, at the time of delivery, to receive an invoice for the amount due. Typically, the invoice has stated separately the beer cost and the State *556 beer taxes and has provided payment terms allowing Childers 10 days to reimburse Miller for the cost of the delivered beer, including the beer taxes paid by Miller. Once Childers has purchased and stocked the packaged beer, it then sells the beer to retailers for sale to the ultimate consumer. Childers generally has billed the retailer for the purchase price of the beer, without separating out the State and local beer taxes previously paid or accrued. Beer is a perishable commodity with limited shelf life. Miller regards the shelf life of its packaged beer to be 3 months. Miller has informed its distributors by bulletin that if a distributor's inventory includes beer older than 3 months, the distributor should no longer sell the beer to retailers. The bulletin specified that when a distributor's inventory exceeds the 3-month limitation, Miller will collect the old beer and will destroy it at the distributor's expense. Sometimes Childers' inventory has included beer older than 3 months. At those times, Childers usually has given away the old beer or has returned it to the breweries. On those occasions, Childers has not received a rebate on the price of the beer, and although *557 Alabama permits a distributor to seek refund of the beer taxes previously invoiced and paid, Childers has never applied for such a refund. Childers hired an accountant to advise it of the appropriate financial and tax treatment of the State and local beer taxes. The accountant advised Childers that in its financial books and on its income tax return, Childers should currently deduct the State and local beer taxes in the year when paid or accrued. Childers was not the only beer distributor in North CentralAlabama to so treat these beer taxes; one of the other two wholesale beer distributors in that region treated the beer taxes likewise. On its Federal income tax return for calendar year 1977 Childers showed its date of information as January 1, 1977 and showed no beginning-of-year inventory. On its 1977 return Childers deducted beer taxes in the amount of $685,901.98 as a current expense as a part of its cost of goods sold. In computing its cost of goods sold, Childers subtracted from its cost of merchandise purchased and from other costs its ending inventory. Childers had valued its ending inventory at $247,912.84, which amount did not include the amount of beer taxes attributable *558 to the beer remaining in yearend inventory. The beer in 1977 ending inventory included $76,994.40 billed to Childers as beer tax applicable to that beer. The $76,994.40 made up a part of the $685,901.98 beer taxes deducted by Childers as a part of its cost of goods sold in 1977. In his notice of deficiency respondent disallowed a portion of petitioner's claimed current deduction for State beer taxes paid or accrued during 1977. Respondent explained that-- It is determined that you are entitled to a deduction for cost of goods sold in the amount of $5,418,717.38 instead of $5,501,579.03 as claimed on your return. Therefore, your taxable income is increased $82,861.65. See the computation below: Cost of goods sold per return
$5,501,579.03
Cost of goods as revised
5,418,717.38
Total adjustment
82,861.65
Less: Agreed Portion
13,566.69
Unagreed Portion
$69,294.96
The unagreed portion relates to ending inventory and consists of the following item: State Tax
$69,294.96
Total State Tax at 5"
$76,994.40
Allowable State Tax at 1/2"
[5] 7,699.44
Adjustment to State Tax
$69,294.96
*559 It is determined that four and one-half cents of the total tax of five cents imposed on malt liquor by the State of Alabama is not an allowable deduction because this amount represents consumer taxes and as such the taxes are not imposed on the distributor.Therefore, the taxes should have been considered in valuing the ending inventory at cost. OPINION Section 471 prescribes the general rule for income tax accounting where a taxpayer utilizes inventories. [6] It expressly requires that a taxpayer's accounting method must conform as nearly as possible to the "best accounting practice in the trade or business" and that the method must clearly reflect income. Petitioner takes the position that it applied a proper accounting method with regard to its beer inventory and that its practice of currently deducting the State beer taxes paid or accrued satisfies the two requirements of section 471. Petitioner asserts that its accounting method clearly reflects its income over the long-term and that its accounting practice conforms with the method accepted and utilized in the wholesale beer distribution business. On the other hand, respondent contends that petitioner's accounting method *560 does not satisfy the two requirements of section 471 and, consequently, pursuant to sections 446 and 471, he has the authority to compel petitioner to change its accounting practice. [7]
*561 It is clear that sections 471 and 446 authorize the Commissioner to change a taxpayer's accounting method where the concepts of best accounting practice and clear reflection of income are not met. The courts have held that-- The standard we apply is whether the taxpayer's method of accounting reflects his income with as much accuracy as standard methods of accounting permit. * * * this means that the taxpayer must demonstrate substantial identity of results between his method and the method selected by the Commissioner. * * * [Fn. ref. omitted.] * * * the standard it [the taxpayer] must satisfy is extremely high. Wilkinson-Beane, Inc. v. Commissioner,420 F.2d 352, 356-357 (1st Cir. 1970), affg. a Memorandum Opinion of this Court. The Commissioner's selection of an accounting method may be "challenged only upon a clear showing that he abused his discretion." Standard Paving Co. v. Commissioner,190 F.2d 330, 332 (10th Cir. 1951), affg. 13 T.C. 425 (1949). *562 See also Thor Power Tool Co. v. Commissioner,439 U.S. 522, 532-533 (1979); United States v. Catto,384 U.S. 102, 114 (1966); Drazen v. Commissioner,34 T.C. 1070, 1076 (1960). The courts have interpreted the concept of "best accounting practice in the trade or business" to mean that a taxpayer's accounting method must conform with generally accepted accounting principles (GAAP). Where a taxpayer's accounting method is one of a number of methods acceptable under GAAP, this requirement of section 471 may be satisfied. E.g. All- Steel Equipment Inc. v. Commissioner,54 T.C. 1749, 1756-1757 (1970), affd. on this issue, 467 F.2d 1184 (7th Cir. 1972).Pursuant to GAAP for business enterprises, a "major objective of accounting for inventories is the proper determination of income through the process of matching appropriate cost against revenues" on a period basis. [8] It is crucial that each accounting period should reflect the costs associated with inventory on hand as offset against concurrent revenues; future *563 accounting periods likewise should clearly reflect a matching of concurrent revenues with costs incurred in obtaining and producing the inventory. It is not sufficient that a taxpayer's accounting method clearly reflect income cumulatively over many years of an ongoing business. See Estate of Whitaker v. Commissioner,259 F.2d 379, 381 (5th Cir. 1958), affg. 27 T.C. 399 (1956); Wilkinson-Beane, Inc. v. Commissioner,supra.
In the instant case, the record is clear that unless the beer taxes are considered a part of the cost of yearend inventory, there is not complete identity in matching petitioner's revenues and costs within its 1977 taxable year. By petitioner's admission, in the normal course of its business operations, it purchased beer in November and December of 1977 and was unable to sell a portion of such beer until 1978. Although petitioner indicated that only a relatively small amount of beer was on hand at yearend 1977 *564 on which beer taxes had been paid or accrued, the fact remains that under petitioner's accounting method its revenues from beer sold were not identically matched against costs related to that beer. Under GAAP, the definition of cost includes all consideration given to acquire inventory assets. It is the "sum of the applicable expenditures and charges directly or indirectly incurred in bringing an "inventory" article to its existing condition and location." [9] Under GAAP, a taxpayer that maintains an inventory ordinarily must capitalize all acquisition and other costs and deduct them as cost of goods sold at the time of the sale of the inventory asset. On brief petitioner recognizes this to be the general rule. Although petitioner's books and records and income tax return treat the beer taxes as part of its costs of inventoried goods, petitioner deducted all beer taxes in the year paid or accrued regardless of whether the related beer was sold or remained on hand at yearend. Petitioner contends that its accounting treatment is proper because section 164(a) should operate to accelerate the timing of the deductibility of the beer taxes. Petitioner attempts to support its argument *565 by relying on four cases: Heaven Hill Distilleries, Inc. v. United States,476 F.2d 1327 (Ct. Cl. 1973); All- Steel Equipment Inc. v. Commissioner,467 F.2d 1184 (7th Cir. 1972), affg. in part and reversing and remanding in part, 54 T.C. 1749 (1970); Van Pickerill & Sons, Inc. v. United States,445 F.2d 918 (7th Cir. 1971); and Mohawk Liqueur Corporation v. United States,324 F.2d 241 (6th Cir. 1963). We are of the opinion that the four cases on which petitioner relies are not apposite to the instant case. All four of these cases involved circumstances where the taxpayers sought to currently deduct taxes. In each of those cases, it was clear or assumed that, as a legal matter, the taxes were imposed upon the taxpayer-claimant. The case law is well settled that *566 in order to be entitled to a deduction for taxes, a taxpayer must satisfy not only the statutory requirement of section 164(a)[10]--that he paid or accrued such tax within the taxable year--but also must show that the tax was imposed upon him by the taxing authority. Shainberg v. Commissioner,33 T.C. 241 (1959); McDermott v. Commissioner,3 T.C. 929 (1944); Falk Corporation v. Commissioner,23 B.T.A. 883 (1931), affd. 60 F.2d 204 (7th Cir. 1932). As we will discuss below, we are of the opinion that, as a legal matter, the beer taxes in issue were not imposed upon petitioner. [11]
*567 In each of the four cases relied upon by petitioner in which the courts allowed the taxpayer to currently deduct the taxes and other costs, the taxpayers had consistently treated the taxes as deductible items in prior years. By contrast, in the instant case, 1977, the taxable year in issue, was petitioner's first taxable year. Although Mr. Childers had operated his wholesale beer distribution business first as a sole proprietorship and then as a partnership for a total of more than 30 years prior to 1977, this history does not bear upon consistency in accounting practice by petitioner. The consistency requirement is personal to each taxpayer. Wikstrom & Sons, Inc. v. Commissioner,supra at p. 360-361. We are of the opinion that petitioner's accounting method was not the "best accounting practice in the trade or business." Although two of the three wholesale distributors in North CentralAlabama, including petitioner, treated the beer taxes as currently deductible, no evidence was presented as to whether beer distributors in the remainder of the State treated these taxes similarly.On the basis of the treatment accorded to these beer taxes by distributors *568 in one small region of Alabama, we do not conclude that such treatment was in accord with the industry as a whole. The second aspect of our decision involves the issue of whether the Alabama beer taxes were imposed upon petitioner. As we stated above, we are of the opinion that, as a legal matter, the Alabama beer taxes in question were not imposed upon petitioner. Therefore, in addition to our conclusion that petitioner's accounting method does not conform with the requirements of section 471, we further hold that petitioner is not entitled under section 164(a) to deduct the taxes. The language of the relevant Alabama statutes, Alabama Code Title 28, sections 28-3-181 and 28-3-182, has not been interpreted by the State's highest court for purposes of determining upon whom the beer taxes are imposed. Consequently we must attempt to ascertain the treatment that the Alabama Supreme Court might accord if this issue were before it. Commissioner v. Estate of Bosch,387 U.S. 456 (1967).The language of Alabama Code Title 51, section 718 (as amended by Laws 1963, 2d Sp. Sess., p. 209), involving a State tax on tobacco, is similar to the statutes in question, and *569 as a guide we look to two cases in which the Alabama Supreme Court interpreted that statutory language. Alabama Code Title 51, section 718, provides in relevant part: Sec. 718. Who liable for tax; amount.--In addition to all other taxes of every kind now imposed by law and which are not specifically repealed by this article 9, every person, firm, corporation, club or association, within the state of Alabama, who sells or stores or receives for the purpose of distribution to any person, firm, corporation, club or association within the state of Alabama, cigars, cheroots, stogies, cigarettes, smoking tobacco, chewing tobacco, snuff, or any substitute therefor, either or all, shall pay to the state of Alabama for state purposes only a license or privilege tax which shall be measured by and graduated in accordance with the volume of sales of such person, firm, corporation, club or association in Alabama. * * * (e) The tax herein levied shall be paid to the state through the use *570 of stamps as herein provided. However, every wholesaler, distributor, jobber, or retail dealer shall add the amount of the tax levied herein to the price of the tobacco or tobacco products sold, it being the purpose and intent of this provision that the tax levied is in fact a levy on the ultimate consumer or user with the wholesaler, distributor, jobber, or retail dealer acting merely as an agent of the state for the collection and payment of the tax to the state. Therefore, notwithstanding any exemptions from taxes which any such seller may now or hereafter enjoy under the constitution or laws of this or any other state, or of the United States, he shall collect the tax imposed hereunder from the purchaser or consumer, and the amount of the tax shall constitute a debt from the purchaser or consumer to the seller until paid. It shall be unlawful for any person, firm, corporation, association, or copartnership to fail or refuse to add to the sales price and collect from the purchaser the amount of the tax to be added to the sales price and collected from the purchaser hereunder. * * * [Emphasis added.] The tobacco tax, a privilege or license tax measured by a graduated *571 formula in accordance with the volume of tobacco product sales, is imposed in addition to all other taxes imposed by Alabama law.The statute provides for the affixation of stamps to each package of tobacco products in order to evidence the payment of this stamp tax. By the statutory terms, the tobacco stamp tax is levied on the licensee who acts as the collection agent for the State to collect the tax from the consumer. The case of State v. Automatic Sales,277 Ala. 63, 167 So.2d 146 (1964), involved the computation of sales taxes. There, cigarette retailers sold individual cigarette packages in vending machines. The total sales price included the tobacco stamp tax but the base price and the tobacco stamp tax were not separately displayed on the vending machines. The State Department of Revenue entered an assessment against the cigarette retailers for insufficient payment of State taxes. The Department of Revenue took the position that the retailers' gross revenues subject to taxation were higher than reported because the retailers should not have been entitled to an allowance or deduction for the tobacco stamp taxes actually paid by the consumer but not designated *572 specifically and directly as taxable against the cigarette consumer. The retailers contended that the stamp taxes should have been credited against their gross sales receipts and that they were entitled to a tax refund. The Alabama Supreme Court reviewed Alabama Code Title 51, section 718, and concluded that the statute imposed the tobacco stamp tax on the consumer rather than the retailer. The Court based its holding on the statutory language and on the fact that the retailers had included the tobacco stamp tax as a cost of their cigarettes sold. In State v. Killian Wholesale Grocery Co.,289 Ala. 691, 271 So.2d 499 (1972), a different issue arose involving the same Alabama statute. There, a tobacco wholesaler challenged an assessment concerning the tobacco stamp tax on cigarettes which had been in its possession but had been stolen prior to their sale. The Alabama Supreme Court, in reversing the lower courts, held that the wholesaler was obligated by the Alabama laws to affix the Alabama tax stamp to the cigarettes immediately after its receipt of the unstamped tobacco and that the wholesaler was liable for payment of the tobacco stamp tax on the unstamped *573 stolen cigarettes even though the consumer was the ultimate taxpayer. In so holding, the Court stated (at 501-502): We consider it significant that although [section 718] (e) as amended declares that the tax is levied on the consumer and that the dealer is merely a collection agent it provides that the tax shall be a debt from the purchaser or consumer to the seller until paid. This creation of a debtor-creditor relationship between two parties other than the State indicates that the dealer is still obligated to pay the tax as provided in section 719 and in turn can be reimbursed by collecting from the consumer or user.Under this theory the ultimate consumer is made the ultimate taxpayer but the initial burden of affixing and cancelling the stamps remains on the dealer as provided in section 719. [Emphasis in original.] Similar to Alabama Code Title 51, section 718, the terms of subsection (a) of Alabama Code Title 28, sections 28-3-181 and 28-3-182, expressly provide that a privilege or excise tax is levied on persons licensed to sell, store, or receive beer for distribution *574 to others and is measured in accordance with graduated sales volume. Subsection (b) of each statute requires that the subsection (a) tax be added to the sales price of the beer and specifies that the licensed person is a collection agent for Alabama with the intent that the tax is levied on the consumer. Following the reasoning that the Alabama Supreme Court utilized in interpreting the tobacco stamp tax, in the end, it is the economic reality that the ultimate consumer pays the beer tax; [12] a mere agency relationship exists between the licensee and the State. These ramifications closely track those of the tobacco stamp tax, as determined by the Alabama Supreme Court. We therefore conclude that if the Alabama Supreme Court were confronted with the facts and issue before us, it would hold that Alabama Code Title 28, sections 28-3-181 and 28-3-182, impose the beer tax on the ultimate consumer of the beer and not on petitioner. *575 For two reasons we have concluded that petitioner is not entitled to currently deduct the State beer taxes in issue: (1) as a legal matter, the taxes are not imposed upon petitioner as settled case law would require for satisfaction of section 164(a); and (2) petitioner has not clearly shown that the Commissioner abused his discretion, accorded under sections 446 and 471, by requiring petitioner to change its accounting method. Indeed, we have found that petitioner's accounting method did not clearly reflect income and was not the "best accounting practice in the trade or business," and that to require petitioner to deduct the taxes in the year the related inventory is sold more accurately reflects its income and is the "best accounting method." Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the taxable years, unless otherwise indicated.↩
2. These statutes were repealed by Acts 1979, No. 79-802, p. 1475, § 6(a), effective October 1, 1980, and were superseded by new sections 28-3-184 through 28-3-192. ↩
3. The City of Huntsville assessed a local beer tax pursuant to Section 8, Huntsville Privilege License Code, Ordinance 74-418 (1974). Respondent did not disallow petitioner's current deductions for the Huntsville beer tax and for the beer tax imposed by Alabama Code Title 28, section 28-3-180.↩
4. As a result of the repeal of Alabama Code Title 28, sections 28-3-180 through 28-3-182, subsequent to October 1, 1980, the breweries were not responsible for submitting tax payments when filing reports with the AlabamaABC Board; the ABC Board collected the beer taxes directly from the wholesale distributors.↩
5. The 1/2 cent State beer tax that respondent allowed petitioner to currently deduct was the amount imposed under Alabama Code Title 28, section 28-3-180.↩
6. Section 471 provides as follows: Whenever in the opinion of the Secretary the use of inventories is necessary in order clearly to determine the income of any taxpayer, inventories shall be taken by such taxpayer on such basis as the Secretary may prescribe as conforming as nearly as may be to the best accounting practice in the trade or business and as most clearly reflecting the income. See also section 1.471-2(a), Income Tax Regs.↩, which incorporates much the same language. 7. Section 446 (a) and (b) provides: (a) GENERAL RULE.--Taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books. (b) EXCEPTIONS.--If no method of accounting has been regularly used by the taxpayer, or if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary, does clearly reflect income.↩
8. Statement 2, ARB No. 43, Chapter 4, reproduced in AICPA Accounting Research Study No. 7,↩ "Inventory of Generally Accepted Accounting Principles for Business Enterprises," p. 244 (1964).
9. Statement 3, ARB 43, Chapter 4, reproduced in AICPA Accounting Research Study No. 7, p. 245 (1965). Similarly, section 1.471-2(c), Income Tax Regs.↩, defines inventory cost to include all expenses associated with the acquisition of the asset.
10. Section 164(a) provides as follows: (a) GENERAL RULE.--Except as otherwise provided in this section, the following taxes shall be allowed as a deduction for the taxable year within which paid or accrued: (1) State and local, and foreign, real property taxes. (2) State and local personal property taxes. (3) State and local, and foreign, income, war profits, and excess profits taxes. (4) State and local general sales taxes. (5) State and local taxes on the sale of gasoline, diesel fuel, and other motor fuels. In addition, there shall be allowed as a deduction State and local, and foreign, taxes not described in the preceding sentence which are paid or accrued within the taxable year in carrying on a trade or business or an activity described in section 212↩ (relating to expenses for production of income). 11. Although the cases relied on by petitioners are clearly distinguishable on the basis of the tax impositon requirement, the cases are enlightening for purposes of determining whether petitioner's accounting method conforms as nearly as possible to the "best accounting practice in the trade or business" and clearly reflects income as required by sec. 471. In All- Steel Equipment Inc. v. Commissioner,54 T.C. 1749 (1970), affd. in part and reversed and remanded in part, 467 F.2d 1184 (7th Cir. 1972), the taxpayer was a metal fabricator that manufactured and sold metal office furniture. On its corporate income tax return, the taxpayer valued its inventory at prime cost by including only expenses of materials and labor; the taxpayer excluded manufacturing overhead in computing the total inventory costs. Two issues were raised at trial: (1) Whether the Commissioner had authority to require the taxpayer to change its method of inventory accounting from the prime cost method to full absorption costing, and (2) whether repair expenses attributable to manufactured goods on hand at yearend could be currently deducted rather than included as an inventory cost. This Court and the Circuit Court both concluded that the taxpayer's prime cost method was not a GAAP and did not clearly reflect income within the meaning of section 471. When determining which costs were includable as part of the prime costing method as compared to the full absorption method, this Court looked at the taxpayer's costs which had been incurred for taxes, losses and research and experiment. We stated (54 T.C. at 1759) that such costs could be currently deducted rather than capitalized as inventory costs, but recognized that we had previously held in Wikstrom & Sons, Inc. v. Commissioner,20 T.C. 359 (1953), that such taxes were not a currently deductible expense but instead includable as an inventory cost.We considered the Wikstrom case as not controlling. The issue with respect to the deductibility of taxes was not raised in the Circuit Court, so that court did not address that issue. Both courts concluded that the Commissioner could require the taxpayer to change to the full absorption accounting method. With regard to the issue of deductibility of repair expenses, this Court found that the taxpayer could currently deduct such expenses rather than capitalize them as part of the cost of inventory. The Circuit Court reversed the Tax Court and relied upon the rule of section 461(a), which provides that "any deduction or credit * * * shall be taken for the taxable year which is the proper taxable year under the method of accounting used in computing taxable income." The Circuit Court then held that, prior to considering the deductibility provision of section 162, it is necessary to formulate the proper accounting method under section 471 and the timing of expense deductions. The Circuit Court stated that sections 461(a) and 471 require that repair costs be deducted only in the taxable year in which the related manufactured goods are sold. In Commissioner v. Idaho Power Company,418 U.S. 1, 19, f.n. 13 (1974), the Supreme Court commented on All-Steel Equipment Inc. v. Commissioner,supra.The Supreme Court refused to give its opinion on whether the taxpayer's claimed repair expenses were deductible or required capitalization treatment under section 263. In part, the Supreme Court stated: The Tax Court, in discussing deductions for taxes, losses, and research and experimental expenditures, observed that "deductions expressly granted by statute are not to be deferred even though they relate to inventory or capital items." 54 T.C., at 1759. This statement, when out of context, is subject to overbroad interpretation and, as is evident from our holding in the present case, has decided limitations in application. In Mohawk Liqueur Corporation v. United States,324 F.2d 241 (6th Cir. 1963), the taxpayer, a manufacturer of alcoholic beverages, elected to inventory its distilled spirits and finished products on the LIFO method. For several years the taxpayer paid certain excise taxes known as floor stock taxes. For taxable years prior to the years in issue, the taxpayer valued its inventory on a cost basis, and added such taxes to its yearend inventory on hand as a part of its cost of goods. However, commencing in the year at issue, the taxpayer treated the floor stock taxes previously paid as currently deductible as part of cost of goods sold. The issue was whether the taxpayer could change its method of accounting so as to currently deduct the floor stock taxes. The court concluded that the Internal Revenue Code requires consistency in inventory practices and accounting method, and therefore, because the taxpayer's original treatment of the taxes conformed with the best accounting practice and clearly reflected income, the Commissioner could compel the taxpayer to continue such treatment. The court appears to have assumed that the taxpayer had the right to currently deduct the floor stock taxes under section 164(a) and did not discuss this specific issue. In Van Pickerill & Sons, Inc. v. United States,445 F.2d 918 (7th Cir. 1971), the taxpayer, a wholesale distributor, purchased unaged whiskey from distillers but, to allow for aging of the whiskey, the distillers stored the taxpayer's whiskey in their storerooms until it became marketable 4 or 5 years later. The distillers charged the taxpayer a monthly storage fee for this service. Once the whiskey became marketable, the distillers bottled the whiskey and invoiced the taxpayer for the storage charges, the bottling charges and the Kentucky taxes on finished distilled spirits. For several years, the taxpayer had prorated and accrued the storage charges over the years of storage of the whiskey and on its annual Federal income tax return deducted that year's accrued portion of the storage charges. The taxpayer deducted the amount of the Kentucky taxes in the year invoiced by the distiller. The issue in the case was whether the taxpayer's accounting method clearly reflected taxable income as required by section 471. The court reasoned that the two touchstones to making a decision were this taxpayer's consistent or lack of consistent use of one accounting practice and similar tax treatment by other distributors. The court found that the taxpayer had consistently expensed the storage cost and taxes for several years and the evidence produced at trial indicated that "a great majority of the distributors who purchased bulk whiskey expensed * * * taxes while 50 percent or more of those liqueur distributors expensed storage charges." 445 F.2d 918, 921. The Circuit Court additionally regarded as important the fact that the Commissioner had consistently approved the taxpayer's accounting method during audits of prior tax years. The Circuit Court held that the taxpayer's method of accounting came within the purview of the "best accounting method" and clearly reflected income as required by section 471. In Heaven Hill Distilleries, Inc. v. United States,476 F.2d 1327 (Ct. Cl. 1973), the taxpayer, a distiller of bourbon, incurred carrying charges for storing whiskey in barrels during the aging process.The taxpayer currently deducted the carrying charges and all production costs, including the Kentucky ad valorum tax, as ordinary and necessary business expenses under section 162. The Court of Claims held that the disputed costs could not be reasonably considered a part of production or manufacturing, and since the taxpayer had consistently deducted them for years, the court would not require the taxpayer to change its accounting method. In so concluding, the Court of Claims relied heavily on section 1.471-2(b), Income Tax Regs., which provides that-- In order clearly to reflect income, the inventory practice of taxpayer should be consistent from year to year, and greater weight is to be given to consistency than to any particular method of inventorying or basis of valuation so long as the method or basis used is substantially in accord with sections 1.471-1 through 1.471-9. The court indicated that although the Commissioner's method might be a preferred accounting method, the taxpayer's method was not unreasonable and had been consistently maintained. In comparison, this Court in Schultz v. Commissioner,50 T.C. 688, 696 (1968), affd. 420 F.2d 490 (3d Cir. 1970), stated that storage charges were "essential ingredients of the cost of acquiring property, [and] they are not deductible but are required to be capitalized * * *." In the Schultz↩ case (at p. 697), State taxes were not considered to be deductible since the taxpayer had not shown they were imposed on him or paid by him.
12. As petitioner admits on brief, citing for support Weinert's Estate v. Commissioner,294 F. 2d 750, 752 (5th Cir. 1961), revg. 31 T.C. 918↩ (1959), it is the economic realities which determine the tax consequences.