VAN PICKERILL & SONS, INCORPO-
RATED, Plaintiff-Appellee,

v.

UNITED STATES of America,
Defendant-Appellant.

No. 18743.

United States Court of Appeals,
Seventh Circuit.

July 16, 1971.

Johnnie M. Walters, Asst. Atty. Gen., Carolyn R. Just, Atty., Tax Div., U. S. Dept. of Justice, Washington, D. C., Donald B. Mackay, U. S. Atty., Springfield, Ill., Meyer Rothwacks, Elmer J. Kelsey, Attys., Tax Div., Dept. of Justice, Washington, D. C., for defendant-appellant; Frank J. Violanti, U. S. Atty., of counsel.

Thomas L. Cochran, Springfield, Ill., Sorling, Catron & Hardin, Springfield, Ill., for plaintiff-appellee.

Before KNOCH, Senior Circuit Judge, and KERNER and STEVENS, Circuit Judges.

KERNER, Circuit Judge.

This appeal concerns a suit for refund of federal income taxes for the years 1961, 1962 and 1963 in the amount of $18,325.69. The district court, sitting without a jury, entered judgment for the taxpayer, Van Pickerill & Sons, Incorporated, from which the government appeals.

Taxpayer is a wholesale distributor of liquor for several Illinois counties. As part of its business, taxpayer buys Stitzel-Weller whiskies under a purchase and distributorship agreement in which it is designated as the sole distributor of all whiskey bottled by Stitzel-Weller under the "Old Fitzgerald" brand for 24 counties in southern Illinois. In each of the taxable years taxpayer purchased unaged, white whiskey from Stitzel-Weller's bonded warehouse. Stitzel-Weller then stored this whiskey in white oak, charred whiskey barrels for either four or five years, charging a monthly fee

for this service. These charges were allowed to accumulate, and taxpayer was not billed until 48 months had elapsed. During the taxable years, taxpayer accrued yearly, and deducted as expense each year, the monthly storage charges.

When the taxpayer determined that the whiskey had reached a stage suitable for marketing, it sent Stitzel-Weller a purchase order containing bottling and labelling instructions. On delivery, Stitzel-Weller invoiced the taxpayer not only for bottling charges, but also for the Kentucky taxes due. Since its incorporation, and during the taxable years, the taxpayer has accrued and deducted each year as an expense the amount of Kentucky tax on distilled spirits resulting from the yearly valuation of the spirits by the Kentucky Department of Revenue.

Taxpayer also participated in a fire and extended coverage insurance pooling agreement fund with other purchasers of bulk whiskey from Stitzel-Weller. Taxpayer was billed monthly for charges and deducted as an expense each year the cost of these insurance premiums.

The Commissioner determined that taxpayer's method of accounting for inventory of bulk whiskey did not clearly reflect taxable income as required by Section 471 of the Internal Revenue Code, 26 U.S.C. § 471.

> Whenever, in the opinion of the secretary or his delegate the use of inventories is necessary in order clearly to determine the income of any taxpayer, inventories shall be taken by such taxpayer on such basis as the secretary or his delegate may prescribe as conforming as nearly as may be to the best accounting practice in the trade or business and as more clearly reflecting the income.

After assessment and payment of the additional income taxes determined to be due for the taxable years, the taxpayer filed refund claims which were disallowed by the Commissioner.

The district court held that the Kentucky taxes, insurance premiums, and storage costs were proper annual deductions, and that the taxpayer's method of accounting did clearly reflect its income. The government position in this appeal is squarely at issue with this conclusion. It argues that the costs of storage and Kentucky taxes should have been added to the cost of the whiskey since the product, after aging, is quite different from the newly distilled whiskey. Because of this change in the nature of the product, the government draws an analogy to costs of acquisition which, if apposite, requires the charges to be added to the value of the inventory. See United States v. Catto, 384 U.S. 102, 109–110, 86 S.Ct. 1311, 16 L.Ed.2d 398 (1966), rehearing denied, 384 U.S. 981, 86 S.Ct. 1857, 16 L.Ed.2d 692 (1961); Photo-Sonics, Inc. v. Commissioner, 357 F.2d 656 (9th Cir. 1966). Under the government's approach, the charges would be deducted as cost of goods sold from taxpayer's receipts at the time of sale. The virtue of this accounting method, as propounded by the government, is that deductions are matched against receipts, insuring a proper determination of revenue in each accounting period.

Taxpayer questions neither the necessity of aging nor the materiality of the change in the resultant product. Rather, taxpayer hinges his argument on the impropriety of characterizing the charges as costs of acquisition. In effect, taxpayer contends that the arguable nature of the characterization renders its accounting method permissible under Section 471 of the 1954 Internal Revenue Code.

■ Section 471 provides that the accounting method prescribed should conform as nearly as possible to the best accounting practice in the trade or business and more clearly reflect income. Both the taxpayer and the government introduced the opinions of noted experts on the question of the "best accounting practice" leading the district court to conclude that "no uniform method of accounting can be prescribed for all taxpayers." The government argues that this conclusion is erroneous since use of

the superlative "best" in Section 471 allows but one acceptable accounting method. We do not believe, however, Congress intended the federal judiciary to decide, as a matter of law, accounting disputes where there is a wide diversity of expert opinion. Congress has so indicated by using the phrase "conforming as nearly as may be * * *" in Section 471. Paragraph 1.471–2(b) (26 C. F.R. § 1.471–2(b)) lends additional support: "Inventory rules cannot be uniform but must give effect to trade customs which come within the scope of the best accounting practice in the particular trade or business." Evidence adduced at trial indicates that a great majority of the distributors who purchased bulk whiskey expensed insurance and taxes while 50% or more of those liquor distributors expensed storage charges. See John Wanamaker Philadelphia, Inc. v. United States, 359 F.2d 437, 441, 175 Ct.Cl. 169, CCL (1966). We agree with taxpayer that no one accounting principle or case supports the government position since there is no one, single definition of costs.

The government also argues that expensing these charges does not clearly reflect income. The substance of the government's position is identical to that previously expressed: taxpayers must match deductions with revenue so that income is clearly reflected. We note, however, that the district court found that the change in accounting ordered by the Commissioner "has an overall minimal impact on the tax liability of plaintiff for taxes, except the tax liability for 1954 to 1961 was added to the taxes for 1961." Thus it appears that the decision by the Commissioner is more an expression of preference for capitalizing these charges rather than a determination that taxpayer's consistent use of its methods will not reasonably reflect income in the long run. Klein Chocolate Co., 36 T.C. 142, 146 (1960).

Furthermore, pertinent parts of paragraph 1.471–2(b) of the Regulations support the position of the taxpayer:

In order clearly to reflect income the inventory practice of a taxpayer should be consistent from year to year, and *greater weight is to be given to consistency than to any particular method of inventory* or basis of valuation so long as the method or basis used is substantially in accord with paragraphs 1.471–1 through 1.-471–9. *An inventory that can be used under the best accounting practice in a balance sheet showing the financial position of the taxpayer can, as a general rule, be regarded as clearly reflecting income.* [Emphasis added.]

The practice of taxpayer in expensing these charges was followed by its accountants from the inception of its incorporation. The Internal Revenue Service itself consistently approved this method of accounting in its audits of taxpayer. In addition, financial statements of the taxpayer, used for business purposes, were prepared on the basis of expensing these charges. For these reasons, we conclude that the finding by the district court that taxpayer's accounting method clearly reflected income is not clearly erroneous.

The only authority which appears in conflict with this determination is Schultz v. Commissioner, 420 F.2d 490 (3d Cir. 1970), aff'g per curiam, 50 T.C. 688 (1968). In *Schultz* the tax court held impermissible a speculator's attempt to purchase bulk whiskey, treat the carrying charges as deductions under Section 212 of the Code, and report the profit as a capital gain. The facts in *Schultz* are readily distinguishable from those of the case at bar: taxpayer is not a speculator, has followed a consistent accounting practice, and raises an inventory question under Section 471. The *per curiam* opinion of the Third Circuit, which affirmed the result reached by the tax court, 420 F.2d 490 (3d Cir. 1970), explicitly recognized the limited nature of its decision:

The distinction between an ordinary expense and a capital expenditure in this field is based on a factual analysis of the relationship of the expenses

to the entire transaction. Although storage charges, insurance premiums, and property taxes are normally deductible as ordinary expenses, they are not deductible where they are incurred as an integral part of a capital transaction. The Tax Court's determination that the pre-payments here made were incurred as part of a capital transaction is essentially a factual determination.

On review of the record we cannot say that the factual determination made by the Tax Court is "clearly erroneous", and accordingly its Decision will be affirmed. [420 F.2d at 491.]

We realize that taxpayer's inventory of unbottled aging whiskey has some characteristics of work in progress. Yet, the applicable Code section and regulations appear designed to afford taxpayers the type of flexibility exercised by Van Pickerill & Sons, Incorporated.

Accordingly, this cause is affirmed.

Affirmed.