MARCOR, INC., AND SUBSIDIARIES, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 13037-82, 29876-82.    Filed July 27, 1987.

*Lawrence M. Dubin*, *Michael F. Duhl*, *Michael M. Conway*, and *Michael A. Clark*, for the petitioner.
*James F. Kidd*, for the respondent.

WILLIAMS, *Judge*:* These consolidated cases are before the Court on the parties' cross-motions for partial summary judgment pursuant to Rule 121, Tax Court Rules of Practice and Procedure.

The Commissioner determined deficiencies in Federal income tax for petitioner's taxable years ended January 31 of 1972, 1973, 1974, 1975, and 1976 and the short taxable year ended July 1, 1976, as follows:

| Docket No. | TYE— | Deficiency |
|---|---|---|
| 13037-82 | Jan. 31, 1972 | $6,694,810 |
| | Jan. 31, 1973 | 4,014,231 |
| | Jan. 31, 1974 | 3,455,772 |
| 29876-82 | Jan. 31, 1975 | 7,695,893 |
| | Jan. 31, 1976 | 17,307,164 |
| | July  1, 1976 | 26,200,669 |

---

*By order of the Chief Judge, these cases were reassigned to Judge Williams for decision and opinion.

The issues this Court must decide are, for purposes of calculating gross profit pursuant to the installment sales provisions of section 453,[1] (1) whether installation costs and preparation expenses for merchandise sold in installment sales are includable in cost of goods sold; (2) whether a portion of cost of goods can be allocated to price discounts and markdowns and deducted as a promotional or advertising expense; and (3) whether State sales and use taxes imposed upon the vendee are includable in contract price.

## FINDINGS OF FACT

Except as noted (notes 14, 17, and 20 and text at 195), the parties agree on the material facts which have been stipulated and are so found. Petitioner Marcor, Inc., is a Delaware corporation having its principal office at Chicago, Illinois, at the time the petitions in these cases were filed.

Montgomery Ward, Inc. (Ward), is one of the members of petitioner's consolidated group. Ward is in the business of selling general merchandise at retail through mail order catalogs and more than 400 department stores located throughout the United States. Ward is a dealer in personal property within the meaning of section 1.453-2(c)(1), Income Tax Regs.

Ward is an accrual basis taxpayer, which prior to July 1, 1976, reported its income on the basis of a 52- to 53-week taxable year ending on the Wednesday closest to January 31. Beginning with its 1964 taxable year Ward elected for Federal income tax purposes to report its gross income from installment credit sales pursuant to the provisions of section 453. During the years at issue, approximately 54 percent of Ward's sales were on credit. Credit sales were made primarily under Ward's revolving credit accounts. Some credit sales were also made under traditional time payment plans.

Some of the merchandise Ward sells requires installation prior to its use by the consumer. All merchandise may be purchased from Ward by the consumer either with or without installation. Ward installs only its own merchan-

---

[1] All section references are to the Internal Revenue Code of 1954 as amended and in effect during the years at issue in these cases, unless otherwise indicated.

dise. The principal categories of merchandise sold by Ward requiring some form of installation include the following:

— custom draperies, slipcovers, upholstery, shutters, and window shades
— floor coverings (hard surface)
— floor coverings (carpet, cushions)
— all home improvement products (washers, dryers, ranges, etc.)
— plumbing, heating, and central air-conditioning
— fencing, and lawn and garden equipment
— automotive replacement items

Ward charges a fee for most of its installation services, and usually states the fee separately from the purchase price. When installation fees are included in the purchase price, the price is higher than that for the same item sold uninstalled.[2] Ward provides installation services to generate earnings from its services, to increase sales of merchandise to its customers, and to improve service to its customers.

Income from charges to Ward's customers for installation services and Ward's costs of such services were as follows:[3]

| | 1972 | 1973 | 1974 | 1975 | 1976 | 7/1/76 |
|---|---|---|---|---|---|---|
| Charges— non-automobile departments | $25,861,767 | $30,163,311 | $37,708,799 | $37,183,382 | $34,091,698 | $17,159,062 |
| Charges— automobile services | 21,443,380 | 23,925,136 | 28,023,293 | 32,768,079 | 38,037,748 | 17,992,163 |
| Costs— non-automobile departments | 21,855,961 | 25,855,194 | 32,256,252 | 33,614,438 | 30,507,185 | 15,264,650 |
| Costs— automobile services | 18,133,932 | 19,858,249 | 23,233,170 | 29,298,860 | 32,791,692 | 14,810,793 |

Ward includes charges for its installation services in total contract price for purposes of calculating gross profit under the installment method.[4] Ward records such charges in its accounts receivable and as installation income. Ward's costs

---

[2] The selling price of automobile tires and batteries is not increased if Ward installs them.

[3] Automobile service charges not related to sales of personal property and not included in contract price, e.g., tuneups, are excluded. Ward's automobile service costs included herein reflect only the amount of such costs which are allocable to Ward's automobile service charges included in contract price, as determined in respondent's notices of deficiency for the years at issue.

[4] In his statutory notices of deficiency respondent made no adjustment to Ward's treatment of installation charges as includable in total contract price.

of installation services, including both services for which customers were charged and services for which no additional charge was imposed, consist of employee payroll expenses, payments to outside contractors, and costs for transportation and supplies. Approximately 75 percent of installation costs attributable to Ward's departments other than the automobile department, were payments to outside contractors. Ward deducted its costs of installation services as period costs on its Federal income tax returns for each of the years at issue in these cases.[5]

Ward sells some categories of merchandise which require "preparation services," viz, unpacking, cleaning, assembly (e.g., bicycles, furniture), or alteration (e.g., clothing). Ward charges its customers a separate fee for some of these merchandise preparation services. Ward records such charges in its sales accounts receivable. Ward did not include merchandise preparation charges in the contract price on its returns for the years at issue. Ward recorded its payroll and other costs for merchandise preparation services, including its costs for which no additional charge was imposed on its customers, in merchandise preparation expense accounts for each of the years at issue. To determine its taxable income Ward deducted as period expenses its costs for merchandise preparation, including employee payroll costs and payments to outside contractors.

Ward's income from charges for merchandise preparation services and Ward's costs for such services were as follows:

| | 1972 | 1973 | 1974 | 1975 | 1976 | 7/1/76 |
|---|---|---|---|---|---|---|
| Merchandise preparation charges (income) | $423,380 | $591,166 | $911,787 | $1,362,100 | $1,507,422 | $647,275 |
| Merchandise preparation costs[1] (deductions) | 4,717,093 | 5,110,250 | 6,061,595 | 6,957,281 | 6,902,782 | 2,852,240 |

[1] Includes all Ward's costs of merchandise preparation, regardless of whether the consumer was charged for such services.

[5] Jefferson Stores, Inc. (Jefferson), was acquired by Ward in 1973. Jefferson had previously elected to report gross income from installment credit sales pursuant to the installment method. Its accounting method with respect to deferred gross profit was the same as Ward's for the years before the Court. Jefferson also reported its installation service charges and costs in a manner consistent with the practices of Ward as described above. Therefore, our holding on the issue of whether installation service costs are to be included in Ward's cost of goods sold will apply equally to Jefferson.

Ward excluded from cost of goods sold its expenses incurred in providing merchandise installation and merchandise preparation services in computing its gross profit under the installment method pursuant to section 453.

For its taxable years 1972, 1973, 1974, and 1975, Ward reduced its cost of goods sold by a proportionate amount that Ward determined to be attributable to the following items:

— *promotional markdowns*: temporary markdowns in the price of merchandise made in connection with selected and regular promotional sales.

— *employee discounts*: Ward allowed its employees a 10-percent discount from the sales price for the taxable years at issue herein.

— *necessary markdowns*: reductions in the price of merchandise made to reflect loss in value due to soil, damage, or obsolescence.

— *allowances and other discounts*: discounts offered to charitable and public institutions, policemen, and firemen; promotional discounts on automobile tires, batteries, and accessories; and, compensatory discounts for defective or irregular merchandise.

— *yearend cost reductions*: reductions to reflect the revaluation of catalog merchandise held in inventory to its market value, if lower than cost.

The amounts of retail markdowns and discounts and the costs attributed thereto by Ward are as follows:[6]

| | 1972 | 1973 | 1974 | 1975 | 1976 | 7/1/76 |
|---|---|---|---|---|---|---|
| Promotional markdowns | $111,126,574 | $128,287,208 | $156,835,316 | $198,480,033 | $224,036,377 | $91,345,106 |
| Cost attributed | (62,529,968) | (72,201,324) | (89,627,300) | (112,921,696) | (126,672,408) | (51,507,678) |
| Necessary markdowns | 51,243,682 | 56,824,031 | 63,154,492 | 65,670,488 | 66,406,046 | 26,724,205 |
| Cost attributed | (28,834,307) | (31,981,132) | (36,090,898) | (37,361,911) | (37,546,643) | (15,069,245) |
| Employee discounts | 7,572,587 | 8,644,983 | 10,774,478 | 11,623,848 | 12,319,308 | 4,810,627 |
| Cost attributed | (4,261,019) | (4,865,483) | (6,157,291) | (6,613,156) | (6,965,460) | (2,712,616) |
| Allowances and other discounts | 59,098,941 | 64,157,803 | 71,945,443 | 82,163,147 | 89,196,289 | 34,394,334 |

---

[6]These amounts do not include the amounts of markdowns and discounts and the costs attributed thereto by Ward with respect to its catalog sales.

| | 1972 | 1973 | 1974 | 1975 | 1976 | 7/1/76 |
|---|---|---|---|---|---|---|
| Cost attributed | ($33,254,383) | ($36,108,653) | ($41,114,662) | ($46,745,079) | ($50,432,474) | ($19,394,277) |
| Percentage of cost to retail | 56.269 | 56.281 | 57.47 | 56.893 | 56.541 . | 56.388 |

Ward determines the cost it attributes to its markdowns and discounts by multiplying the amount of markdowns and discounts by a percentage representing the ratio between the cost and the retail price of the merchandise sold. Ward deducted as period operating expenses for each of its taxable years 1972 through 1975 the amounts derived by multiplying this "cost complement" percentage by the amount of markdowns and discounts for the respective years.

Ward included in cost of goods sold on its Federal income tax returns for its taxable year 1976 and short taxable year ended July 1, 1976, the costs it attributes to price discounts and markdowns as follows:

| TYE— | Promotional markdowns[7] | Necessary markdowns | Allowances and other discounts | Employee discounts |
|---|---|---|---|---|
| 1/31/76 | $77,115,661 | $37,546,643 | $22,873,560 | 0 |
| 7/01/76 | 30,804,922 | 15,069,245 | 9,291,972 | 0 |

The amounts represent 50 percent of the cost Ward attributed to promotional markdowns, 100 percent of the cost Ward attributed to allowances and other discounts and to necessary markdowns, and none of the cost attributed to employee discounts.[8]

To calculate contract price, Ward properly added to its retail net sales (gross sales less returns and allowances) the following items charged to its customer accounts but not included in retail net sales:

---

[7]Discounts on automobile tires, batteries, and accessories were treated as promotional markdowns, rather than as allowances and other discounts, on these returns.

[8]In an earlier action, involving taxable years 1969 through 1971, the parties agreed that Ward would include in cost of goods sold 50 percent of the cost attributed to promotional markdowns, 100 percent of the cost attributed to necessary markdowns and allowances and other discounts, and none of the cost attributed to employee discounts for Ward's taxable years 1969 through 1971. Ward filed its Federal income tax returns in accordance with the terms of this agreement for its taxable year 1976 and short taxable year ended July 1, 1976.

— State sales and use taxes imposed on the vendor
— postage charges
— transportation and delivery charges
— installation service charges incidental to and rendered contemporaneously with the sale of Ward merchandise
— carrying charges on traditional time payment accounts

State sales and use taxes which Ward determined were imposed upon the buyer were not included in total contract price.

## OPINION

The primary issue is whether Ward may deduct currently certain costs associated with income reported under the installment method of reporting pursuant to section 453.[9] The parties agree on the method of calculating deferred gross profit.[10] The parties dispute, however, whether certain items must be properly included in cost of goods sold or may be deducted as period costs.[11] At issue is whether (1) Ward's installation and merchandise preparation costs and (2) a portion of Ward's cost of goods allocated by Ward to markdowns and discounts on its merchandise may be deducted as current expenses. Another issue that we must decide is whether Ward may include State sales and use taxes imposed upon the vendee in total contract price.[12]

---

[9]Sec. 453(a) states:

SEC. 453(a). DEALERS IN PERSONAL PROPERTY.—

(1) IN GENERAL.—Under regulations prescribed by the Secretary or his delegate, a person who regularly sells or otherwise disposes of personal property on the installment plan may return as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the gross profit, realized or to be realized when payment is completed, bears to the total contract price.

(2) TOTAL CONTRACT PRICE.—For purposes of paragraph (1), the total contract price of all sales of personal property on the installment plan includes the amount of carrying charges or interest which is determined with respect to such sales and is added on the books of account of the seller to the established cash selling price of such property. This paragraph shall not apply with respect to sales of personal property under a revolving credit type plan or with respect to sales or other dispositions of property the income from which is, under subsection (b), returned on the basis and in the manner prescribed in paragraph (1).

[10]Deferred gross profit is calculated by dividing the difference between total contract price and cost of goods sold by total contract price, and multiplying the resulting ratio (the "gross profit percentage") by the amount of qualifying accounts receivable.

[11]While a lower cost of goods sold will result in a higher gross profit percentage, which in turn will result in a greater amount of deferred income, the benefit of the deduction for a period cost is that it offsets income currently.

[12]By including these sales taxes in total contract price, Ward would increase its income, most of which would be deferred, but would also receive the benefit of the deduction currently.

*Installation and Merchandise Preparation Costs*

Petitioner contends that installation and merchandise preparation costs are not includable in cost of goods sold for purposes of determining gross profit under the installment method of reporting income. Instead, petitioner treats such costs as period expenses deductible in the year incurred. Respondent argues that installation and merchandise preparation costs must be included in cost of goods sold.

Respondent's position is based principally on two grounds: (1) To exclude these costs from inventory permits them to be deducted while the income generated by installation and merchandise preparation is deferred; thus, income and expense are mismatched; (2) applying normal inventory rules, these costs are properly included in inventory as production costs. We reject both grounds.

Respondent's first ground reflects a theory that would achieve the result he desires but would, in effect, change for purposes of section 453 the normal inventory accounting rules of section 471. Gross income from sales in a merchandising business means, in general, total sales less cost of goods sold. Sec. 1.61-3(a), Income Tax Regs. The installment method of reporting pursuant to section 453 permits merchandisers to defer gross income over the term that payments on account of installment sales are earned. Sec. 1.453-1(a), Income Tax Regs. The installment method of reporting is a tax accounting method for the reporting of gross income. Sec. 1.453-1(b), Income Tax Regs. Consequently, the calculation of deferred income pursuant to section 453 is designed to produce an appropriate timing for reporting "sales less cost of goods sold." Sec. 1.453-1(b), Income Tax Regs. Cost of goods sold is, pursuant to section 471, the sum of the cost of inventory on hand at the beginning of the period and of inventory purchases during the period, less the cost of inventory on hand at the end of the period. See sec. 1.471-3(a), and (b) and sec. 1.471-8, Income Tax Regs. The components of the cost of inventory determine cost of goods sold.[13]

---

[13]Respondent has adopted the position in his revenue rulings that only inventory costs are included in cost of goods sold. Rev. Rul. 79-196, 1979-1 C.B. 181; cf. Rev. Rul. 80-141, 1980-1 C.B. 111.

Section 471 and the corresponding regulations provide the general rules governing inventory accounting for Federal income tax purposes. These rules explicitly state that only those costs incurred in acquiring possession of the merchandise are includable in the cost of inventory. In the case of merchandise purchases, the cost of inventory purchased since the beginning of the taxable year is determined by adding "the invoice price less trade or other discounts * * * [plus] transportation or other necessary charges incurred in acquiring possession of the goods." Sec. 1.471-3(b), Income Tax Regs. Costs incurred after a taxpayer has acquired full dominion and control over the merchandise, e.g., selling expenses or subsequent transportation costs, are not included in inventory cost. *Northern Natural Gas Co. v. Commissioner*, 44 T.C. 74 (1965), affd. 362 F.2d 781 (8th Cir. 1966); sec. 1.61-3(a), Income Tax Regs.; cf. sec. 1.471-3(c), Income Tax Regs.; see *Van Pickerill & Sons, Inc. v. United States*, 445 F.2d 918 (7th Cir. 1971). An expense which is not included in inventory cost is thus not included in cost of goods sold pursuant to section 471. Installation expenses and merchandise preparation expenses are not costs incurred in acquiring possession of merchandise. Therefore, they are not expenses included in inventory cost (sec. 1.471-3(b), Income Tax Regs.), and are not included in cost of goods sold.

In *Van Pickerill* the court determined that the cost to the taxpayer, a liquor distributor, of monthly storage charges for the aging of whiskey was not a cost of acquiring the whiskey, and therefore pursuant to section 471 represented, not a cost of inventory pursuant to section 471, but a currently deductible expense. Accord *Heaven Hill Distilleries, Inc. v. United States*, 201 Ct. Cl. 423, 476 F.2d 1327 (1973). Similarly, Ward's installation and merchandise preparation expenses do not represent costs of acquiring the goods. With a few possible exceptions,[14] Ward acquires its merchandise as finished goods in salable condition, and sells its merchandise with or without installation or merchandise preparation charges.

---

[14] As discussed below, the record seems to show that draperies, slipcovers, and upholstery are fabricated by Ward or its subcontractor. Fabrication presents a factual issue of whether Ward is, for the goods fabricated, a manufacturer. This issue will be tried if the parties cannot agree on it.

There is not a different set of rules governing inventory accounting in calculating cost of goods sold for purposes of section 453. To impose a new and different set of inventory accounting rules for purposes of the installment sales rules and thus depart from the normal inventory accounting rules of section 471 et seq., is an anomalous proposition that runs counter to both the statute and respondent's regulations. Section 453 and the regulations require a computation of gross income, not taxable income, and nowhere in the regulations under section 453 (or elsewhere that we can find) is there articulated a different method for calculating cost of goods sold. It is certainly not the function of this Court to write such a set of rules. Yet this is what respondent asks of us. Section 1.453-2(d)(6)(iv), Income Tax Regs., explicitly authorizes Ward to include in contract price for purposes of calculating gross income under the installment method the income earned from installation and merchandise preparation. Perhaps respondent could have written regulations under section 453 to require a matching with such income of the costs of generating such income. We refrain from commenting on the scope of this authority to so write his regulations because he did not do so. As stated above, not all costs associated with the sale of merchandise are deferred under the installment method. In fact only inventory costs—costs of goods sold—are deferred under respondent's regulations. Installation and merchandise preparation costs are not costs of goods. They are ancillary expenses of selling and delivering the merchandise. Therefore, the costs of installation and merchandise preparation incurred by Ward were not costs of acquiring the merchandise sold and are properly deductible in the year incurred. Cf. *Van Pickerill & Sons, Inc. v. United States*, *supra*.

Respondent further argues that in reality, Ward's installation and merchandise preparation services are an inseparable part of the merchandise sold because Ward reports its income from installation services on the installment method together with the associated merchandise sales. If such services were in fact part of the merchandise being sold, then the associated costs of providing such services would be properly includable in cost of goods sold. Relying on

*Madison Newspapers, Inc. v. Commissioner*, 47 T.C. 630 (1967), respondent argues that the entire cost of installation must be included in cost of goods sold to match the income associated with those costs. *Madison Newspapers* did not, however, present the issue of what cost elements were included in inventory. *Madison Newspapers* presented the issue of whether, for purposes of the investment tax credit, property was in the "physical possession, or control" of the taxpayer wherein the installation of the property was a complex operation requiring extensive time to perform.

In *Madison Newspapers*, the Court held that the taxpayer purchased an installed product as of the date the machinery was installed, not as of the earlier date when the component parts were received. However, in noting the complexity of the installation process involved, the Court declined to decide whether a similar rule would apply to merchandise "where the installation involved a mere turning of a few screws or hooking up of some wires or pipe." 47 T.C. at 637. We decline to apply *Madison Newspapers* to these cases, in which the installation and merchandise preparation services are comparatively simple and are incidental to the sale of merchandise that other customers acquired uninstalled at a lower price.[15] All Ward's merchandise could be purchased by the consumer with or without installation or merchandise preparation charges. The consumer was free to accept (and pay a higher price for) or to reject Ward's installation and merchandise preparation services. Providing these services on request of the customer does not transmute the services into the merchandise being sold. In short, the sale of these services is separable from the sale of personal property and is incidental to and contemporaneous with the sale of personal property. Consequently, the cost of providing these services is not a cost of goods.

---

[15]Respondent also relies on *Pope v. Commissioner*, T.C. Memo. 1965-211. In *Pope* the taxpayer constructed houses for sale from six pre-designed models offered by the taxpayer on lots owned by the buyers. The Court held the taxpayer sold personal property, not services, and therefore was permitted to report income under the installment method. *Pope* did not consider whether the costs of construction were to be included in cost of goods sold. In any event, we find such services to be far more complex and involved than the typical installation and merchandise preparation services provided by Ward (but see note 17), and decline to infer from *Pope* that Ward's sales of installation and merchandise preparation services represented sales of personal property, the costs of which would be includable in cost of goods sold.

Respondent also argues that Ward is not merely a retailer but is also a manufacturer. Respondent contends that Ward purchases unfinished goods—e.g., wood for flooring or material for draperies—and itself manufacturers these goods into finished, salable merchandise. Respondent contends that therefore, Ward's "manufacturing" costs with respect to the merchandise it sells must be included in cost of goods sold.

A process which changes or alters the essential character of merchandise sold is a manufacturing process the costs of which must be included in inventory. *Heaven Hill Distilleries, Inc. v. United States*, 201 Ct. Cl. 423, 476 F.2d 1327 (1973); see sec. 1.473-3(c), Income Tax Regs.; cf. *Carlson v. Commissioner*, 79 T.C. 215 (1982), affd. 712 F.2d 1314 (9th Cir. 1983). Respondent argues that Ward's costs of processing fabric into custom-made draperies are in essence manufacturing costs required to process the goods into salable form and are, therefore, inventory costs which must be included in cost of goods sold. Similarly, respondent contends that Ward's costs of automobile services and installation of major appliances and hard-surface flooring are costs which must be included in cost of goods sold as manufacturing costs required to process the goods into salable merchandise.

Typically, Ward's varied installation services do not change the essential character of the merchandise it sells. Ward's automobile services department installs such items as brakes, shock absorbers, engines, car stereos, and mufflers. No essential change in the merchandise occurs during these installations. The equipment simply becomes a functional unit of the customer's automobile. Ward is not required to process any automobile parts to put them into salable form. Moreover, the charges for Ward's merchandise exceeded the charges for its installation services with respect to at least 86 percent of all income from sales of automobile merchandise that was included in contract price.[16] Accordingly, none of Ward's installation expenses for such automobile services are inventory costs includable

---

[16] A breakdown of the costs of parts and labor for the remaining automobile services provided by Ward is not in the record.

in cost of goods sold (but see note 17 regarding sales of engine overhauls).

Similarly, the installation and merchandise preparation services Ward provides in connection with the sale of its non-automotive merchandise do not alter or change the essential character of the respective goods sold.[17] In general, the expenses incurred in providing installation and merchandise preparation services, rendered incidental to and contemporaneous with the sale of the merchandise, are not inventory costs of a manufacturer includable in cost of goods sold.

Respondent also contends that petitioner's method of accounting does not clearly reflect income, arguing that by deducting, currently, operating expenses which relate to deferred income, petitioner fails to match costs with the income with which it is associated. This position presumes that such costs must be inventoried, and we have seen that statutory and case law provide otherwise. Pursuant to section 471, Ward's installation and merchandise preparation expenses are not inventory costs, and thus are properly excluded from cost of goods sold. Further, expenses not included in inventory costs are properly deducted in the year paid or incurred. *Van Pickerill & Sons, Inc. v. United States*, 445 F.2d 918 (7th Cir. 1971); cf. also *Blum's, Inc. v. Commissioner*, 7 B.T.A. 737, 764 (1927). The "clear reflection of income" doctrine implements, and does not contradict, well-established statutory and case law. The installation and merchandise preparation expenses incurred by Ward were properly deducted as period costs in the year paid or incurred and are not includable in cost of goods sold.

---

[17]The record does not indicate the nature or extent of Ward's processing of drapery fabric prior to Ward's sale of the finished draperies, slipcovers, or upholstery to its customers. The record is similarly unsettled as to sales of overhauled engines and remodeled kitchens. Therefore, we draw no conclusions as to whether the essential character of such merchandise acquired by Ward is altered or changed by Ward prior to its sale to its customers. Further proceedings will be necessary to resolve this factual issue. See note 14. Further, Ward's procedure manual for contract installation sales indicates that, for some items of Ward's merchandise, the installation charge itself exceeds the price of the merchandise sold without installation. The sale of such installation services must be approved by the store manager. The issue is one which could tend to show that Ward's sale of services is an inseparable element of the merchandise sold. However, the specific items to which this issue relates are not identified in the record. Further factual proceedings will be necessary if the parties are unable to agree on the resolution of this issue.

*Price Markdowns and Discounts*

Petitioner argues that in a discount sale it sells merchandise below its original retail price, and thereby incurs costs for promotion, employee compensation, or other expense. Petitioner also deducts a portion of the cost of goods that Ward attributes to its price discounts and markdowns as a current expense and reduces Ward's cost of goods sold by the same amount.[18] This accounting practice encourages a retailer to establish an artificially high "original" retail sales price so that the larger the discount or markdown, the greater the "cost" incurred on the sale which could be deducted as a current expense. The tax law cannot be construed to provide such an incentive to retailers. This practice assumes a change in the nature of cost of goods that does not in fact occur. As discussed above, the cost of goods is the cost of acquiring the merchandise offered for sale. That cost is unaffected by the price charged for the merchandise. Deducting a portion of cost of goods as a period expense because the merchandise is not sold at a higher price finds no support in the law. Therefore, the costs attributed by Ward to its price discounts and markdowns are not deductible as period operating expenses and must be viewed as what they are: cost of goods sold.

Petitioner agrees that Ward's cost of goods is "immutable and unchanged" and objects to characterizing its accounting treatment as having assumed a change. Petitioner argues that what actually happens when merchandise is sold at a discount is similar to what happens in a bargain sale to charity—part of the transaction is a sale, and part, free distribution of goods. Petitioner contends that there are two components of a discount sale: (1) A sale at a reduced (but positive) profit or mark-on, and (2) a free distribution of merchandise. We disagree. Petitioner's analogy ignores the facts: the acquisition costs of Ward's merchandise are unaffected by its pricing policies. Ward does not reduce the

---

[18]For example, assume the cost of goods sold of an item whose retail price is $100 is $50, and the item is sold at a 10-percent discount. Ward determines the "cost component" of the $10 discount by multiplying the discount by the ratio of cost of goods sold to the retail price, in this case: $10 x 50/100 = $5. Ward treats the resultant figure as a current operating expense and reduces its cost of goods sold by the same amount. If the item was not sold at its marked-down price, but instead at its original retail sales price, Ward would continue to record its cost of goods sold at $50.

selling price of its merchandise below its cost. Ward does not distribute its merchandise free. Ward does not even suggest that some merchandise is sold at a loss to encourage other sales. While petitioner may forego some profit by marking down its merchandise,[19] it does not forego the opportunity to recover the cost of the merchandise it sells. Petitioner is arguing the facts of a case not before us.

Petitioner also argues that the cost attributable to markdowns on damaged or soiled goods is deductible as a casualty loss pursuant to section 165. In general, the amount of casualty loss deductible pursuant to section 165 is the difference between the fair market value of the property immediately before and immediately after the casualty, or the taxpayer's basis in the property, whichever is lower. See sec. 1.165-7(a)(2), Income Tax Regs.; sec. 1.165-7(b)(1), Income Tax Regs. However, this rule does not apply to casualty losses which the taxpayer, at its option, reflects in its inventory, since such losses are thereby reflected in cost of goods sold. *National Home Products, Inc. v. Commissioner*, 71 T.C. 501, 530 (1979); sec. 1.165-7(a)(4), Income Tax Regs.

In this case, the record does not indicate the value of casualty losses, within the meaning of section 165 and the corresponding regulations, suffered by Ward for the years at issue and the extent to which Ward's necessary markdowns reflect such losses from damage to its merchandise. Further proceedings to resolve this factual issue will be necessary. With respect to the remaining price discounts and markdowns applied by Ward, we hold that petitioner may not reduce Ward's cost of goods sold by the amount Ward determines to be the cost component of price markdowns and discounts.

## State Sales Use Taxes

The parties agree that State sales and use taxes imposed on the vendor are properly includable by Ward in total

---

[19]Since Ward has to find a purchaser of the goods at the price it asks, it discounts its prices to increase the number of purchasers (and sales). If Ward's pricing policies are rational, this practice will increase profit.

contract price.[20] Petitioner argues that State sales and use taxes, imposed upon the vendee must also be included in total contract price. Petitioner contends that such taxes are a part of the selling price of merchandise sold, and therefore must be included in total contract price regardless of their legal incidence.

The importance of the distinction between a tax imposed upon the vendor and a tax imposed upon the vendee is one which has long been recognized. *Bailey v. Commissioner*, 88 T.C. 900 (1987); see *First Agricultural Bank of Berkshire County v. State Tax Commission*, 392 U.S. 339, 346-348 (1968); *Federal Land Bank of St. Paul v. Bismarck Lumber Co.*, 314 U.S. 95, 99 (1941). "In general, taxes are deductible only by the person upon whom they are imposed." Sec. 1.164-1(a)(5), Income Tax Regs.; see also sec. 1.164-5, Income Tax Regs. In these cases, the incidence of taxation is important to determine whether Ward has additional income from the sale.

We conclude that sales or use tax imposed upon the consumer is not part of the sales price of the merchandise, even though the State may require the vendor to collect the tax from the consumer and remit the collections to the State. Ward may not use the tax collected for general corporate purposes. Cf. *Florists' Transworld Delivery Association v. Commissioner*, 67 T.C. 333, 346 (1976). The payments are not made to Ward for the merchandise bought. Rather the payments are made to the State on account of the sale, and Ward acts in the capacity of a tax collector. Cf. *Seven-Up Co. v. Commissioner*, 14 T.C. 965, 977 (1950). Ward is merely an agent or nominee of the State, and the amounts collected by Ward are not collected for its benefit but for the State. The tax collected is not Ward's income.[21] Therefore, we conclude that State sales

---

[20]Respondent has long held the position that State sales and use taxes imposed upon the vendor are properly includable in total contract price. Further, respondent has consistently taken the position that such taxes are currently deductible as period expenses, and are not includable in cost of goods sold. Rev. Rul. 60-53, 1960-1 C.B. 185; Rev. Rul. 79-196, 1979-1 C.B. 181. The parties do not agree, however, as to whether the sales and use taxes of certain States are imposed upon the vendor or the vendee. Therefore, further proceedings will be necessary to resolve this factual issue.

[21]In Rev. Rul. 83-4, 1983-1 C.B. 102, 103, respondent demonstrates the treatment of such collections by the following example:

"Assume a sale by X for 100x dollars, a sales tax of 10x dollars, and a cost of goods sold of 50x dollars. Moreover, assume that payments will be made in 10 equal annual installments.

and use taxes imposed upon the consumer are not includable in total contract price.

Accordingly,

*An appropriate order will be entered.*

Reviewed by the Court.

STERRETT, CHABOT, NIMS, PARKER, WHITAKER, KÖRNER, HAMBLEN, COHEN, CLAPP, SWIFT, JACOBS, GERBER, WRIGHT, PARR, and WELLS, *JJ.*, agree with this opinion.

X's total contract price would be 100x dollars, its gross profit, 50x dollars (100x dollars less 50x dollars), and its gross profit percentage, 50 percent (50x dollars/100x dollars). However, since the total payments received by X over the 10 year period will equal 110x dollars (100x dollar total contract price plus 10x dollar sales tax), the payments received by X must be reduced by the 10x dollars sales tax amount before the gross profit percentage (50 percent) may be applied against the balance. Therefore, the 11x dollar payment received by X in the year of sale will be considered first the receipt of the 10x dollar sales tax, with the remaining 1x dollar payment applied against the total contract price. Taxable income reported in the year of sale is therefore .5x dollars ((11x dollars less 10x dollars) x 50 percent). Each installment payment received thereafter will be treated as payment against the total contract price."

